DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

```
UNITED STATES OF AMERICA        )
                                )
             Plaintiff          )
                                )
        v.                      )     Criminal No. 2010-36
                                )
ENID EDWARDS,                   )
FRANCIS BROOKS, and             )
BILL JOHN-BAPTISTE,             )
                                )
             Defendants.        )
_____ )
```

ATTORNEYS:

**Kim Lindquist, AUSA**
St. Thomas, U.S.V.I.
     *For the plaintiff,*

**Jay I. Shreenath, Esq.**
Austell, GA
     *For defendant Enid Edwards,*

**George H. Hodge, Jr., Esq.**
St. Thomas, U.S.V.I.
     *For defendant Francis Brooks,*

**Robert L. King, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Bill John-Baptiste.*

<u>ORDER</u>

**GÓMEZ, C.J.**

     Before the Court is the motion of Enid Edwards ("Edwards"),
Francis Brooks ("Brooks"), and Bill John-Baptiste ("John-
Baptiste") (together, the "defendants") for a new trial. The
defendants argue that a witness for the United States of America
(the "Government") in this case, who gave as his name "Troy

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 2

Willock," ("Willock 1") lied about his identity. They argue that the identity attested to by Willock 1 properly belonged to another individual named "Troy Willock" ("Willock 2").

Willock 1 presented evidence against Edwards and Brooks relating to Count One, charging a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d).[1] Edwards and Brooks were found guilty of Count One.

On November 1, 2011, the Court held an evidentiary hearing on this matter at which both the Government and the Defendants presented evidence (the "Evidentiary Hearing"). At the close of the hearing, the Court held that: (1) it was unclear whether Willock 1 in fact perjured himself at trial; (2) there was not sufficient evidence to show that, if Willock 1 committed perjury, the Government knew of it before or during the trial; and (3) if Willock 1 committed perjury and the Government was truly blameless, the perjury alone did not create a manifest injustice that would require upsetting the jury's verdict. This written order memorializes that oral order.

---

[1] John-Baptiste was not charged in Count One.

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 3

# I. FACTS

## A. Pretrial

At some point prior to June 24, 2010, a confidential informant identified a man who used the name "Troy Willock" ("Willock 1") as a possible illegal narcotics seller.

On June 24, 2010, a grand jury indicted Troy Willock on two counts of possession of a controlled substance with intent to distribute (the "Willock Case").

The next day, Willock 1 was arrested on that indictment. Willock 1 identified himself as "Troy Willock," and consistently used the name "Troy Willock." Willock 1 provided Federal Bureau of Investigation ("FBI") agents with what he alleged to be his Social Security number ("SSN"), XXX-XX-7940.

On that same day, Willock 1 was arraigned and the Federal Public Defender was appointed counsel.

Within forty-eight hours of Willock 1's arrest, he was fingerprinted. These fingerprints were used to obtain a report from the United States Marshals Service ("Marshals Service") and from the National Crime Information Center ("NCIC").

According to the file maintained by the Marshals Service, Willock 1's fingerprints matched the fingerprints already on file for "Troy Willock."

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 4

The National Crime Information Center ("NCIC") maintains a database of individuals associated with criminal activity. Every individual in the database is identified by their fingerprints. Records of arrests, convictions, or other criminal activity may only be entered into a particular file if the subject's fingerprints match those associated with the file. A search of the NCIC database using Willock 1's fingerprints showed two entries for an individual named Troy Willock. One entry bore the name "Troy Willock" with no known aliases. It listed a birthdate of November 26, 1976. The place of birth was listed as the U.S. Virgin Islands. The individual's racial identity was black. Finally, FBI Number XXXXXXMB2,[2] and a SSN XXX-XX-7940 were associated with that individual.

The second entry bore the name "Troy Willock" and the alias "Troy Allenn Willocks." It listed a birthdate of November 26, 1976. The place of birth was listed as the People's Democratic Republic of Yemen.[3] The individual's racial identity was white. FBI Number XXXXXXTB7 and two SSNs, 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 and XXX-XX-7940, were associated with that individual.

---

[2] FBI Numbers are generated by the FBI and used internally by the FBI to maintain FBI records on various individuals.

[3] At the Evidentiary Hearing, FBI Special Agent Jackson Purkey testified that the country code for Yemen in the NCIC system is "ST," and suggested that the second entry's listing of Yemen as a birthplace might have resulted from an attempt to enter "St. Thomas."

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 5

Shortly after Willock 1's arrest, the Government became aware that two individuals with the name "Troy Willock" had cases in the Superior Court of the Virgin Islands. The Government obtained Virgin Islands Police Department ("VIPD") files on these two individuals. One file contained a photograph of Willock 1. That file was associated with FBI Number XXXXXXTB7 and SSN XXX-XX-1048.

The other file included a photograph of another individual. That file was associated with FBI Number XXXXXXMB2 and SSN XXX-XX-7940. Information relating to "Troy Willock" had been indiscriminately placed in either file, with no determination as to which individual this information corresponded.

At some point before June 30, 2010, the United States Probation Office for the District of the Virgin Islands (the "Probation Office") prepared a Pretrial Services Report in the Willock Case. The report noted that there was some confusion about Willock 1's criminal history because there were three individuals using the name "Troy Willock." The Probation Office disclosed this information to counsel for Willock 1 and the Government.

On July 28, 2010, the Federal Public Defender withdrew from its representation of Willock 1 because of a conflict of

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 6

interest. Leslie Payton ("Payton") was thereafter appointed counsel.

On August 10, 2010, Willock 1 and Payton had a debriefing meeting with Assistant United States Attorneys ("AUSAs") Kim Lindquist ("AUSA Lindquist") and Nolan Paige ("AUSA Paige"), FBI Special Agent Jackson Purkey ("Agent Purkey"), and Drug Enforcement Agency Task Force Officer Shawn Querrard. The subject of the two individuals by the name of "Troy Willock" was addressed.

At the evidentiary hearing, Payton testified that at this time he informed the Government that he represented both Willock 1 and another individual with the same name, birthdate, and SSN ("Willock 2"). Moreover, he testified that he expressed concern one of them was misappropriating the identity of the other. According to Payton, the Government promised to initiate an investigation into the matter. Payton further testified that at about this time he shared these concerns with the Probation Office.

AUSA Paige and Agent Purkey testified that Payton told them only that he represented two individuals with the same name and birthdate. Both Paige and Purkey testified that Payton's only concern was that the criminal histories of the two individuals not be confused.

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 7

Also at the Evidentiary Hearing, Glennis Baptiste, a
Probation Officer, testified that Payton did not provide the
Probation Office with any information indicating that Willock 1
had stolen the identity of Willock 2.

Willock 1 subsequently agreed to plead guilty to Count One
in the Willock Case. Willock 1 also agreed to testify for the
Government in this case

On September 27, 2010, the Probation Office produced a
Presentence Investigation Report ("PSR") on Willock 1. The PSR
attributes FBI Number XXXXXXMB2 and SSN XXX-XX-7940 to Willock
1. The PSR does not indicate any confusion about Willock 1's
criminal history.

In or about December of 2010, Willock 1, Payton, AUSA
Lindquist and AUSA Paige had another debriefing meeting.
According to Payton, he once again raised concerns about
identity theft. According to AUSA Paige, Payton only reiterated
his concern about possible confusion of criminal histories.
Paige also testified that Payton recommended that Paige disclose
NCIC Report and the PSR generated in the Willock Case to defense
counsel in this case.

On the morning of January 3, 2011, the first day of trial
in this matter and before jury selection, AUSA Paige states that

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 8

he placed three packets containing copies of the NCIC report and the PSR on counsel's table for each attorney and defendant.

After defense counsel entered the courtroom, Jay I. Shreenath, counsel for Edwards, asked AUSA Paige what these packets contained. Paige explained that there were two individuals by the name of "Troy Willock," and that to prevent any potential confusion of the two individuals' criminal histories, the packets contained the NCIC report and the PSR of Willock 1.

AUSA Paige also spoke to counsel for Brooks, Robert L. King ("King"). According to AUSA Paige, King indicated that the packet was not relevant to his client. AUSA Paige did not discuss the packet with George H. Hodge, Jr., counsel for John-Baptiste. These discussions occurred prior to the case being called and was not put on the record.

**B. Trial**

Under oath, Willock 1[4] testified that in or around March 2008,[5] he saw Defendant Brooks pocket a quantity of marijuana from a marijuana dealer during a "shakedown" in the Savan area of St. Thomas. Willock 1 further testified that Brooks then drove off without arresting anyone.

---

[4] At trial, Willock identified himself as "Troy Willocks."

[5] Willock testified that the incident occurred "about a month before Carnival."

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 9

## C. Post-Trial

In or about April of 2011, another individual using the name "Troy Willock" complained to the SSA that Willock 1 had stolen his identity. The local representative of the SSA in St. Thomas determined that Willock 1 was in federal custody and contacted the Probation Office, informing them of Willock 2's complaint. Thereafter, the Probation Office wrote a letter to the Government, Payton, and the Court informing them of Willock 2's complaint.

From on or about April 18, 2011, to on or about April 19, 2011, Payton spoke to Willock 2, Willock 2's parents, and obtained Willock 2's birth certificate.

On April 21, 2011, Willock 1 appeared for sentencing on his guilty plea in the Willock Case. Payton moved to withdraw as counsel at that time. Payton asserted that he had reason to believe that Willock 1 is not who he claims to be. Specifically, Payton stated that, based on his discussions with Willock 2 and Willock 2's family, as well as the shared name, birthdate, and SSN, he believed that Willock 1 had stolen the identity of Willock 2. Payton also noted that Willock 2 had complained to the Social Security Administration (the "SSA") about his identity having been stolen by the "guy working at Viking" (where Willock 1 works).

Rather than sentence Willock 1, Court instructed the parties to file briefs regarding Willock 1's identity. The parties were directed to address when the Government became aware of the use of one SSN by two individuals. As a result of the Court's instruction, the Government contacted the national office of the SSA, and was informed of the following: SSN XXX-XX-7940 corresponds to a "Troy Willock." According to SSA records, the parents of this Troy Willock are Yvette Jocelyn and Charles Willock. According to SSA records, two applications were submitted to the SSA to obtain a Social Security Card for Troy Willock: one in 1997 and the second in 2002. The national office indicated no complaints having been filed there, but stated that any complaint might have been made at the local SSA office on St. Thomas. The SSA reported that SSN XXX-XX-1048 (a second SSN associated with Willock 1 on the NCIC report) is not an issued number.

The Government also determined that Defendant Brooks, in his capacity as a VIPD officer, arrested Willock 1 in September of 2000. Brooks arrested Willock 2 in March of 2010. In June of 2010, Brooks testified at the suppression hearing associated with the Willock 2 arrest and prosecution, in which he identified Willock 2 as the person involved.

At the Evidentiary Hearing, Willock 1 testified that his name was "Troy Willock." However, he invoked his Fifth Amendment privilege against self-incrimination when asked questions regarding his date of birth, parentage, or social security number.

Carol Abbott, a former girlfriend of Willock 1, further testified that she had known Willock 1 since 2001 and that he had always used the name "Troy Willock" and was known as such by his friends.

Willock 2 also testified, asserting that he was in fact born on November 26, 1976, and that his SSN was XXX-XX-7940. He identified as his parents Yvette Jocelyn and Charles Willock.

## II. <u>DISCUSSION</u>

A witness commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993).

"The Supreme Court has long held that the [Government's] knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment." *Lambert v. Blackwell,* 387 F.3d 210, 242 (3d Cir. 2004) (citations omitted). That holding is rooted in the notion that it is fundamentally unfair to the

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 12

defendant when "the prosecution's case includes perjured testimony and . . . the prosecution knew, or should have known, of the perjury." *United States v. Agurs,* 427 U.S. 97, 103 (1976). "The same is true when the government, although not soliciting false evidence, allows it to go uncorrected when it appears at trial." *United States v. Biberfeld,* 957 F.2d 98, 102 (3d Cir. 1992) (citing *Giglio v. United States,* 405 U.S. 150, 153 (1972)).

A conviction arising out of such circumstances must be vacated "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* The Supreme Court has explained: "Although this rule is stated in terms that treat the knowing use of perjured testimony as error subject to harmless error review, it may as easily be stated as a materiality standard under which the fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." *United States v. Bagley,* 473 U.S. 667, 679-80, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).

In this Circuit, "in order to make out a constitutional violation [a defendant] must show that (1) [a witness] committed perjury; (2) the government knew or should have known of [the] perjury; (3) the testimony went uncorrected; and (4) there is

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 13

any reasonable likelihood that the false testimony could have affected the verdict." *Lambert,* 387 F.3d at 242.[5]

The Supreme Court has not yet determined whether the due process clause may still be violated if the Government admits perjured testimony without fault. *See Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006) ("The Supreme Court has not addressed the issue of whether a due process violation occurs if a conviction is based on perjured testimony which was unknown to the prosecution at the time of trial."). However, lower courts addressing this issue have applied an outcome-determinative test. *See Gov't of the V.I. v. Lima*, 774 F.2d 1245, 1245, 1251 (3d Cir. 1985). Thus, the appropriate inquiry is whether "the jury 'probably would have acquitted in the absence of the false testimony.' " *United States v. McCourty*, 562 F.3d 458, 476 (2d Cir. 2009) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

---

[5] Other Circuits rely on tests which, while phrased differently, set forth substantially similar requirements. *E.g., Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998) (*citing Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993)) (defendant must establish "(1) the testimony was false; (2) the state knew it was false; and (3) the testimony was material").

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 14

## III. ANALYSIS

### A. Whether Perjury Was Committed

Following the four requirements that a defendants must satisfy according to *Lambert*, the Court must first determine whether Willock 1 committed perjury. *Lambert,* 387 F.3d at 242.[6]

Generally, testimony offered by a witness that contradicts testimony offered by other witnesses, or even previous testimony by that witness, is insufficient to demonstrate perjury. Rather, the movant must point to proof of the knowing falsity of the witness's statement. *United States v. Caballero*, 277 F.3d 1235, 1244 (10th Cir. 2002) (finding that "even postulating tension between [a witness's] responses on direct and cross, such inconsistency alone does not establish the knowing use of perjured testimony," such that no constitutional error existed because of "the absolute lack of evidence to show either the

---

[6] Perjury, however, is not the only type of false testimony which can result in a new trial. In *Mesarosh v. United States,* 352 U.S. 1 (U.S. 1956), the Court held that the question of whether a prosecution witness's untruthfulness constituted perjury or stemmed from mental illness made no material difference to the remedy and ordered a new trial based on the false testimony. *Id.* at 14. *Mesarosh* rose above the usual case where "allegation of untruthful statements by a government witness asserted by the defense ordinarily will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." *Id.* at 9. The Court further noted that the Government was the party calling the witness's testimony into question and that the Government also conceded that without the witness's testimony, the defendants' convictions could not stand. *Id.* at 10.

In this case, however, there is no contention that Willock's testimony arose out of confusion or mistake.

falsity of [the witness's] testimony or the prosecutor's

knowledge of false testimony").

In *United States v. Hoffecker*, 530 F.3d 137, 182-184 (3d

Cir. 2008), the defendant challenged his conviction for

conspiracy to commit mail and wire fraud on the grounds that a

former employee offered perjured testimony against him. There,

the defendant demonstrated that the Government witness, Swarn,

had been previously untruthful with respect to his employment

with the defendant's firm, Global:

> On cross-examination, defense counsel produced
> broker/trader licensing applications in which Swarn
> did not list Global as a prior place of employment. On
> re-direct, Swarn explained that he had not admitted to
> having worked at Global and several other companies
> because those companies had been scams, not legitimate
> businesses. Also during cross-examination, defense
> counsel noted that Swarn had not told the [FBI] or the
> United States Probation Office in Florida that he had
> worked at Global. Swarn explained that he had not
> wanted to volunteer the information because he had not
> paid taxes on income from Global and that the FBI did
> not ask him specifically about Global. Finally, in
> response to defense counsel's questions about why
> there was no documentation showing that Swarn had been
> on the Global payroll, Swarn testified that he had
> been paid in cash.

*Id*. Despite these discrepancies, the Circuit found that the

witness had not committed perjury. First, "Swarn gave reasonable

explanations for his alleged false testimony, leading us to

conclude that he testified truthfully." *Id*. Second,

"[a]lthough . . . Swarn had previously concealed his employment

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 16

with Global, this circumstance does not mean that he lied about his employment on the witness stand and counsel was free to comment on Swarn's crebility during closing argument." *Id.* The Circuit Court stressed that "we are concerned here with whether Swarn's testimony was false in this case, not whether he had been forthright in other situations." *Id.*

In this case, Willock 1's testimony at trial as to his name is not plainly contradicted by the factual record developed after trial. At the trial, Willock 1 only gave his name, not his birthdate or social security number. At the Evidentiary Hearing, Willock 1 and Carol Abbott testified that his name was "Troy Willock." "Troy Willock" was apparently the name by which Willock 1 was known among his friends. Moreover, Willock 2's testimony is not necessarily inconsistent with Willock 1 also having the name "Troy Willock," or even having the same birthdate.

Although it is clear that Willock 1 was using a SSN that was not assigned to him, he did not testify to having that SSN at trial. The defendants have not produced any evidence suggesting that Willock 1 is not named "Troy Willock," or that any other statements made by Willock 1 at trial were perjurious.

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 17

## B. Whether the Government Knew or Should Have Known of the Perjury

Second, assuming Willock 1 did commit perjury, the Court must determine whether the Government knew or should have known of the perjury.

### 1. Actual Knowledge

First, the Court must determine if the Government actually knew the testimony at issue was false. "[T]he Supreme Court has not addressed the level of prosecutorial knowledge necessary to constitute a constitutional violation." *Lambert*, 387 F.3d at 249 n.30. However, the Third Circuit has offered some guidance as to when prosecutorial knowledge of false testimony rises to the level of a due process violation in certain circumstances.

In *United States v. Edinborough*, 379 Fed. App'x 271 (3d Cir. 2010), the defendant argued that the Government should have known that their witness, Rawlins, provided false testimony in his trial for cocaine distribution. *Id.* at 277. Rawlins offered divergent testimony in two separate proceedings:

> (1) At Edinborough's trial, Rawlins stated that in July of 2003, Edinborough gave him "four keys" of cocaine to ship. At [a subsequent] trial, Rawlins said Edinborough just gave him books as a trial run.

> (2) At Edinborough's trial, Rawlins said he received $1000 for assisting in the July 2003 smuggling. At [a subsequent] trial, Rawlins said he received $500.

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 18

> (3) At Edinborough's trial, Rawlins said he received
> $1000 from Edinborough for assisting in the November
> 2003 shipment. At [a subsequent] trial, Rawlins said
> he received $2000 from Edinborough.

*Id.* Edinborough asserted that the discrepancies between

Rawlins's testimony in his trial and in the later trial

demonstrated that the Government should have known that Rawlins

committed perjury. The Third Circuit rejected this argument, and

pointed out that "even assuming that Rawlins was lying, there is

no evidence that the Government knew he was lying at the time of

Edinborough's trial. The contradictions in Rawlins's testimony

were only evident after he testified in [the second] trial." *Id.*

(citations omitted).

Here, the defendants have likewise failed to produce any

evidence that, assuming Willock 1 was lying about his identity,

the Government knew he was lying at the time of the trial.

Although it may be a highly improbable coincidence, it is far

from impossible that two individuals may share the same name and

birthdate. Only the uncorroborated statement of Payton suggests

that the Government knew Willock 1 was also claiming Willock 2's

SSN. Payton's statement is undermined by the contrary statements

of Purkey, Paige, and Glennis Baptiste. Neither the NCIC report

nor the VIPD files indicated that Willock 1 was anyone other

than who he said he was. Thus, without more, this Court cannot

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 19

conclude that the Government had sufficient information in its

possession before or during the trial to be charged with

knowledge of Willock 1's alleged perjury.

**2. Constructive Knowledge**

The Court next turns to the issue of whether the

circumstances suggested that the Government elicited testimony

that it should have known was false.

In *Simone v. Warden*, Civil Action No. 08-5243 (TRR), 2009

U.S. Dist. LEXIS 128045 (E.D. Pa. Mar. 20, 2009), the defendant

claimed that the Government should have known that a witness's

testimony would be perjurious. The defendant argued that the

witness, Miller, had "'strong incentive to testify falsely'

because he was a drug addict with two prior burglary convictions

and had pleaded guilty to third-degree murder, robbery,

burglary, criminal trespass, and conspiracy in exchange for

testifying against Simone." *Id.* at *44-45. The defendant also

contended that the Government should have known that Miller's

testimony would be false, as it contradicted ballistic and

physical evidence. *Id.* at *45. Although Miller's testimony was

"confusing and in some ways inconsistent with prior statements,"

this was insufficient to put the Government on notice that

Miller was committing perjury. *Id.* at *46. "[T]he mere assertion

of the state's complicity in a falsehood to produce a

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 20

conviction, uncorroborated by competent evidence does not

entitle a convicted person to a new trial." *Id.* (internal

quotation marks omitted). The *Simone* Court concluded, the

defendant's "claim that the prosecution violated his due process

rights by presenting false testimony is meritless" because the

Government merely presented contradictory evidence, which the

jury was free to evaluate. *Id.* at 49.

In this case, the meeting between prosecutors and Payton on

August 10, 2010, at least raised the issue of confusion of

identities, although Payton and the Government disagree as to

whether the Government was alerted to the fact that two persons

were using the same SSN. However, as discussed above, Payton's

uncorroborated statement, without more, is not sufficient to

charge the Government with knowledge of Willock 1's alleged

perjury; likewise it is insufficient to charge the Government

with constructive knowledge of the alleged perjury.

According to the Government, prior to the trial it was only

aware of Willock 1 and Willock 2 claiming the same name and

birthdate. As the Court has stated, those two commonalities,

alone, are not necessarily indicative of identity fraud. After

becoming aware of the shared names and dates of birth, the

Government states that they compared the criminal records of

Willock 1 and Willock 2, more for the purpose of keeping the

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 21

individuals separate than determining whether one was using a false identity. The Government was aware that the NCIC report indicated, among other things, that one of the Willocks was claiming two SSNs. The report also indicated that one of the Willocks was white and Yemeni. The Government plausibly believed these were simple errors in data entry.

The NCIC Database has no centralized means of verifying the accuracy of information inputted by an arresting officer. The country code for Yemen, "ST," resembles abbreviations for St. Thomas. At the Evidentiary Hearing, Willock 1 denied ever claiming to be white. Taken together, these obvious errors may have led the Government to believe that the third anomaly on the NCIC report--the dual SSNs--was simply another failure of quality control in an otherwise poorly maintained NCIC file.

The Government also had a Pretrial Services Report which indicated some confusion about Willock 1's criminal history. This confusion was ostensibly eliminated by the Presentence Report. The Presentence Report ascribed the SSN XXX-XX-1048 to Willock 1, which is not the same as Willock 2's SSN.

Lastly, the Government had VIPD files on Willock 1 and Willock 2 that displayed considerable confusion about the identity of the two Willocks. However, these files did not

suggest that Willock 1 was claiming Willock 2's SSN, instead

ascribing to Willock 1 the SSN XXX-XX-1048.

In retrospect, it is clear that the Government should have

investigated Willock 1's identity further. Even discounting

Payton's testimony, the Government had information in its

possession that called into question the identity of Willock 1.

Simply contacting the SSA could have forestalled any possibility

of a due process violation. However, in assessing whether a due

process violation in fact occurred, it is the Court's role to

determine whether the Government in fact possessed enough

information that it should have known of the alleged perjury.

*See Edinborough*, 379 Fed. App'x at 277. While the information

undoubtedly cast a specter over the veracity of Willock 1's

claimed name, birthdate, and SSN, it is simply not sufficient to

amount to constructive knowledge that Willock 1 committed

perjury.

The Government does not appear to have known that Willock 1

was using another individual's SSN. Moreover, the Government had

no evidence that Willock 1 is not named Troy Willock.

Because the Federal Government was not in possession of

information calling Willock 1's identity into question until

after the trial, the defendants have not demonstrated that the

Government should have known about Willock 1's false statements.

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 23

As the defendants have failed to satisfy their burden on the
second element of the *Lambert* test, the Court need not address
the remaining elements. *See Virgin Islands v. Suarez*, 242 Fed.
App'x 845, 851 (3d Cir. 2007) (Where the defendant fell "far
short of establishing that [a witness'] testimony was
perjurious, much less that the government knowingly made use of
false testimony to obtain [the] conviction," the Third Circuit
rejected the defendant's claims and did not analyze whether the
testimony was corrected or whether it could have affected the
verdict.).

## C. Faultless Admission of Perjured Testimony

Lastly, assuming Willock 1 committed perjury, the Court
must determine whether the commission of perjury alone, with or
without Governmental knowledge of it, merits a new trial.

In assessing whether perjured testimony merits a new trial,
the Court must determine whether allowing the verdict to stand
would be a "manifest injustice" because there is "real concern
that an innocent person may have been convicted." *United States
v. McCourty*, 562 F.3d 458, 477 (2d Cir. 2009) (internal
citations and quotation marks omitted).

In *United States v. Sanchez*, 969 F.3d 1409 (2d Cir. 1992),
the defendant sought a new trial on the grounds that there were
a number of problems with the testimony of several police

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 24

officers at trial. *Id.* at 1413. Specifically, the defendant

pointed to inconsistencies in the testimony of three police

officers. The first police officer, Sergeant Bushron, testified

that, in executing the arrest warrant for the defendant, he

knocked on the defendant's apartment door. *Id.* at 1412. The

defendant opened the door, and Sergeant Bushrod identified

himself as a police officer. *Id.* The defendant then attempted to

close the door, but Sergeant Bushrod pushed it open. *Id.*

Sergeant Bushrod then saw another man run to the bathrobe and

attempt to flush what appeared to be heroin down the toilet. *Id.*

The second police officer, Detective Domenitz, testified to

substantially the same sequence of events. *Id.*

The third police officer, Detective Chin, testified that he

used a battering ram to open the door of the defendant's

apartment. *Id.* Detective Chin testified that he saw a person

running towards the bathroom, but did not testify to seeing

anyone flush drugs down the toilet. *Id.* at 1413.

Based on these inconsistencies, the district court granted

the defendant a new trial. The Court of Appeals for the Second

Circuit reversed. The Second Circuit held that "assuming that

the testimony of all three police officers should be rejected in

toto as perjured, a new trial still would not be warranted in

this case." *Id.* at 1415. To order a new trial on the basis of

*United States v. Edwards*
Criminal No. 2010-36
Order
Page 25

allegedly perjured testimony, the Second Circuit explained, a
district court must be "prepared to answer 'no' to the following
question: 'Am I satisfied that competent, satisfactory and
sufficient evidence in this record supports the jury's finding
that this defendant is guilty beyond a reasonable doubt?' ". *Id.*
at 1414. In that case, "it could not be said that the jury
probably would have acquitted in the absence of the false
testimony." *Id.* at 1415. In particular, The Second Circuit
pointed to the "detailed testimony" of a cooperating witness
which "alone formed a sufficient foundation for the conviction
of [the defendant]." *Id.*

The relief the defendant sought in *Sanchez* is unavailable
here. First, to constitute perjury, testimony must be knowingly
false. The fact that testimony is inconsistent with or even
contradicted by other evidence is not sufficient to sustain a
finding of perjury. *See Caballero*, 277 F.3d at 1244. In this
case, Willock 1 maintains that his true name is Troy Willock. At
the trial in this case, Willock 1 did not testify to his date or
place of birth, or his SSN. The only issue is whether Willock 1
lied about his name, and on that point, there is but scant
evidence that Willock 1's testimony was knowingly false.

Second, even if the Court were to assume arguendo that the
testimony of Willock 1 was knowingly false--which the Court does

not find it to be--the Court is not convinced that there is a want of "competent, satisfactory, and sufficient evidence in this record support[ing] the jury's finding that this defendant is guilty beyond a reasonable doubt." *Sanchez*, 969 F.3d at 1414. In support of Count One, the Government offered the testimony of Kelvin Moses, John Lindquist, and Elias Deeb. These witnesses testified extensively about a number of instances in which the defendants participated in shake downs, took bribes, bought and sold drugs, and otherwise jointly engaged in racketeering activity. The testimony of these several witnesses "formed a sufficient foundation for the conviction of [the defendants]." *Id.* at 1415. Accordingly, the Court finds that the admission of the alleged perjured testimony without fault does not merit a new trial

## IV. CONCLUSION

The premises considered, it is hereby

**ORDERED** that the defendants' motion for a new trial based on the testimony of Willock 1 is **DENIED**.

S_____
          CURTIS V. GÓMEZ
          **Chief Judge**